## McLENDON HARDWARE CO. v. BLACK.
### (No. 6783.)

(Court of Civil Appeals of Texas. Austin.
June 20, 1924. Rehearing Denied
Oct. 8, 1924.)

**1. Payment ⬤➡43—Rule for application of payments on current account stated.**

Payments made upon a current account, in absence of instruction to the contrary, will be so applied as to liquidate oldest items first, and prevent their becoming barred by limitations.

**2. Estoppel ⬤➡63 — Director estopped to set up agreement with corporation if his conduct misled purchaser of his debt to corporation to his injury.**

If the conduct of a corporation director, who was actively engaged in conducting its business, and to whom books of corporation were at all times available, led a purchaser acting in good faith on such conduct and information disclosed by books to purchase director's indebtedness to corporation, and act to his injury without knowledge of an undisclosed agreement between director and corporation, then director would be estopped to set up such agreement as a defense.

**3. Estoppel ⬤➡115—Allegations held sufficient to make plaintiff's plea of estoppel an issue.**

In an action by purchaser of a director's indebtedness to a corporation, allegations *held* sufficient to make plaintiff's plea that director was estopped to set up an agreement between corporation and him as a defense to the action an issue in the case.

**4. Estoppel ⬤➡54 — Generally knowledge of facts urged, is necessary for application.**

Generally knowledge of facts urged is indispensable to the application of the doctrine of equitable estoppel, but rule does not apply where lack of knowledge is due to culpable negligence of party himself.

**5. Evidence ⬤➡66—Director of corporation, actively engaged in its business, is. chargeable with facts that books disclosed.**

A corporation director, actively engaged in conduct of its business, and to whom the books are open for inspection at all times; is chargeable with facts that books disclosed.

**6. Evidence ⬤➡66—Director chargeable with knowledge of what corporation books disclosed as to his account.**

Where director of corporation helped carry on its business, and repeatedly consulted its books, or had the bookkeeper do so, with reference to his account, knowledge of what the books disclosed as to his account was imputed to him.

**7. Corporations ⬤➡316(1)—Corporation contract with director must be authorized by quorum of board excluding interested director.**

To bind a corporation on a contract with a director, it must be authorized by a quorum of the board, excluding interested director.

**8. Corporations ⬤➡316(1)—Director's contract with corporation enabling him to defeat his indebtedness held invalid.**

Director's contract with corporation, by which he was enabled to defeat by limitation his debt to it, was invalid under Rev. St. art. 1153, where president of corporation in making contract acted alone for it.

**9. Corporations ⬤➡406(2)—President held not to have implied authority to bind corporation by contract with director without action by board of directors.**

That corporation president had, through years of similar dealing, acted for. corporation, did not give him implied authority to bind corporation, by contract with director, which enabled director to defeat his indebtedness to corporation by limitation, since contracts between corporation and its directors are not matters of ordinary occurrence in such business.

**10. Corporations ⬤➡316(1)—Director's contract with corporation which was prejudicial to it held invalid.**

Director's contract with corporation, which secured to corporation nothing that it should not have had without it, and enabled director to defeat by limitation his debt to it, even if supported by a consideration, was manifestly unfair and prejudicial to corporation, and therefore void.

Appeal from District Court, Bell County; Lewis H. Jones, Judge.

Action by the McLendon Hardware Company against D. A. Black. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

Allan V. McDonnell, of Waco, for appellant.

Jno. B. Daniel and W. R. Brown, both of Temple, for appellee.

BAUGH, J. The Brady & Black Hardware Company was a corporation, capitalized at $40,000, doing business in Temple, Tex. W. A. Brady was president and owned $21,-500 of this stock. D. A. Black owned the remainder. In the early part of 1923 the corporation became insolvent and made an assignment of all its assets for the benefit of its creditors. Amongst the assets was an account against D. A. Black, amounting to $3,753.57, as shown by the books of the corporation, purchased at open outcry by appellant, and on which this suit was brought in the district court of Bell county. Appellant also attached certain lands of D. A. Black in Bell county. Black, in addition to general and special exceptions, answered as follows:

"That the said W. A. Brady was complaining because of the fact that this defendant was indebted to said corporation, and was unable to pay off said indebtedness, or secure the payment thereof; and that about the last days of December, 1919, or during the early part of 1920, he and the said W. A. Brady held a conference

concerning said indebtedness—the said W. A. Brady then holding a majority of the stock of said corporation, and being president and active manager thereof—for the purpose of considering the indebtedness due by this defendant to said corporation. And, after the matter had been discussed pro and con, it was finally verbally agreed by and between this defendant and the said W. A. Brady, as president of said corporation, that this defendant's account with said corporation would be due and payable as of January 1, 1920; and that said account should not thereafter be increased by this defendant; and, further, that this defendant would repay to said corporation each year all amounts thereafter advanced to him by it; and that any amounts that might pay, over and above the amount thereafter be advanced to him by said corporation, should be applied to the indebtedness of $7,039.35 accruing prior to January 1, 1920.

"(b) That it now appears from exhibit attached to plaintiffs' first amended original petition filed herein that his account with the said corporation for the year 1921 amounted to $3,-953.11; and that his account with said corporation from January 1, 1922, to April 1, 1923—the approximate date on which said corporation made the assignment for the benefit of its creditors—amounted to $3,851.10; and that the books of said corporation show charges against this defendant for the years 1921, 1922, and 1923, aggregating $7,804.20; that after said agreement was so had, and as shown by said exhibit attached to plaintiffs' petition, this defendant paid Brady & Black Hardware Company, between the days of January 1, 1920, and the date it made its assignment, sums aggregating $9,276.91, and in excess of the value of all goods, wares, merchandise, etc., advanced to him by said corporation after said agreement was so had; that said sum of $9,276.91 was applied to the extinguishment of charges to his account made after January 1, 1920; and that the balance was credited to the said sum of $7,-039.35 accrued prior to January 1, 1920; and that, while his said account with Brady & Black Hardware Company up to January 1, 1920, was a continuing account under the agreement he had with the said W. A. Brady as president of said corporation, said account ceased to be a continuing account as of that date; and that all amounts charged to this defendant on the books of said corporation after January 1, 1920, and all amounts paid by him after that date were charged, paid, and credited in strict accordance with said agreement; and that if the books of said corporation do not so reflect, then he avers that said books have been improperly kept."

Defendant then pleaded that all of said account, yet unpaid, had been due for a period of more than two years when suit was filed, and that it was barred by limitation.

For further statement of the case, we copy the following from plaintiffs' brief, which is substantially correct:

"To the answer of the defendant, the plaintiffs replied by a supplemental petition, and after general and special demurrers to the entire defense as pleaded by defendant, and after a general denial, by way of response to said affirmative defense averred that, if there was any such agreement between the said Brady & Black Hardware Company and defendant, then that such agreement had been waived by defendant, Black, and that said defendant was estopped to assert the same. In such connection, plaintiffs alleged that if the defendant, D. A. Black, and the corporation of Brady & Black Hardware Company, of which the said defendant, D. A. Black, was an officer, had agreed that the credits and payments made by the defendant, D. A. Black, should be applied only on new indebtedness created subsequent to January 1, 1920, so as to allow the account to become barred by limitation, then that said agreement, if any so had, was not in any sense complied with, either by said corporation or said defendant, Black, but that, on the contrary, the said account had continued after January 1, 1920, the same as it had before said date, and had at all times been carried as a running or continuing account, and the credits and payments made by defendant, Black, had at all times been applied and credited thereon as to a running account and to the extinguishment of the oldest indebtedness on such account, so that the balance sued for was not barred by the statute of limitation; that the defendant, D. A. Black, had at all times known that the said credits had been applied on said account as to a running account, and to the extinguishment of the oldest items, and had at no time protested thereto, but had at all times acquiesced therein, and that the first time the defendant asserted said defense was the date of the filing of such answer; that by reason of the consent and acquiescence of the defendant to such application of credits made, the lapse of the long period of time without protest, said defendant had waived the contract and agreement, if any had been had, to apply the credits in the different manner from that in which they had been actually applied.

"Plaintiffs further averred that the defendant, D. A. Black, knew that the plaintiffs were purchasing said account, believing same to be true and to exist as shown by the books of the said corporation of which he was an officer and director, and had at no time given the plaintiffs notice that there existed any such character of defense as was asserted; that but for plaintiffs' reliance on the correctness of said books, and the application of the credits as shown on said books, plaintiffs would not have purchased said account, by reason of which facts defendant was estopped in the premises.

"Plaintiffs further averred that the defendant, D. A. Black, was an officer of said corporation, and that, if any such agreement was made by defendant with said corporation as was averred, then that same was invalid; that it was an unfair contract, made in bad faith, and in fraud of creditors and of said corporation, solely had and made for the personal gain and advantage of the defendant, and wholly unenforceable.

"The defendant D. A. Black's reply to the supplemental petition of the plaintiffs, by a first supplemental answer, was specially excepted to the pleading of waiver, acquiescence, and estoppel. These exceptions were sustained by the court, and all of the affirmative pleading of the plaintiffs, made in their supplemental petition in response to the answer of defendants, were by order of the court stricken from said pleadings.

"The cause proceeded to trial before a jury

on the pleadings as made, and, over objection of the plaintiffs, was submitted to the jury on one special issue, which special issue as framed was: 'Did the defendant, D. A. Black, on or about the 1st day of January, 1920, enter into a contract and agreement with Brady & Black Hardware Company, under the terms of which the account of the said D. A. Black with said company was to be closed as of date January, 1920, and a new account opened, and that only the excess payment from such new account should be credited to the balance due as of date January, 1920, to said corporation?' And to which issue the jury responded: 'Yes.'"

### Opinion.

[1-3] Appellant asserts error of the trial court under eleven assignments. These assignments present, in the main, two general issues which dispose of the case, and it is unnecessary to discuss the assignments in detail. The first general proposition urged by appellant is that the trial court erred in striking out, upon exception by defendant, Black, its plea of estoppel set up in its supplemental petition. Plaintiffs pleaded estoppel against Black in that the books of the corporation not only failed to show any such agreement as pleaded by Black, but showed, on the contrary that his account was a current account; and that knowing such condition, and knowing that same was the inducing cause for the purchase by appellant of his said account, and not advising appellant to the contrary, appellee was estopped, after the purchase, to set up such defense.

We think appellant's pleadings of estoppel were sufficient, and should not have been stricken out. Even after this plea was stricken out the evidence clearly raised the issue. Brady was manager of the corporation and supervised the bookkeeping. Though he testified on direct examination, that on January 1, 1920, the account of Black was stated, and was not thereafter kept as a current or running account, he admitted on cross-examination that the books did in fact show a continuing account of Black treated as current, but stated that the books were wrongfully kept. The books were also introduced in evidence, and showed that at the end of each year Black's entire indebtedness, including that left from the previous year, was added to that of the current year and then from that total was deducted the total of the aggregate payments for the current year. We think that it is immaterial whether his balance was brought forward at the end of the year or the beginning of a new year, if all indebtedness remaining at the end of each year was in fact carried forward and made a part of the account for the ensuing year.

The books of the corporation in appellant's possession at the time it purchased the account did, we think, disclose that Black's account after January 1, 1920, was in fact treated and carried as a current account. The rule is well established that pay-ments made upon a current account, in the absence of instructions to the contrary, will be so applied as to liquidate the oldest items first and prevent their becoming barred by limitation. Willis & Bros. v. McIntyre, 70 Tex. 34, 7 S. W. 594, 8 Am. St. Rep. 574; Jamison v. Compress Co., 45 Tex. Civ. App. 263, 99 S. W. 1053; Railway Co. v. Read Bros. (Tex. Civ. App.) 154 S. W. 1027; Compton v. Ahrens & Ott Mfg. Co. (Tex. Civ. App.) 151 S. W. 884. Under the application of this rule to Black's account as shown by the books of the corporation, none of his account would have been barred by limitation at the time appellant purchased the same.

The evidence also showed that the agent of appellant, who had examined these books, got in touch with Mr. Black before he purchased the account, and Mr. Black told him he owed the account as shown by the books. It is not denied that the agreement pleaded, and the claim of limitation as a bar, were never made known to appellant until after suit was filed.

If Black's conduct as a stockholder and director of the corporation, and actively engaged in conducting the business and the books of the corporation, which were at all times open and accessible to him, led appellant, acting in good faith and upon such conduct and the information disclosed by the books, to purchase said account and act to his injury, without knowledge of the undisclosed agreement between Black and the corporation, then Black would be estopped to set up such a defense. Though such estoppel was not as fully pleaded by appellant as it should have been, we think the allegations were sufficient to make it an issue in the case, and it was error to strike them out. See 21 C. J. 1059 et seq.

[4-6] Though the plea of estoppel was stricken out some evidence on the issue was introduced anyway. Appellee testified that he did not keep the books, and presumed that they reflected the agreement as made by him with the corporation. And appellee urges that, unless he had knowledge thereof, no estoppel could arise against him. As a general rule knowledge of the facts urged is indispensable to the application of the doctrine of equitable estoppel. However, this is not true where lack of knowledge is due to the culpable negligence of the party himself. Bender v. Brooks, 61 Tex. Civ. App. 464, 130 S. W. 653; Weinstein v. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23. A director of a corporation, actively engaged in the conduct of its business, and to whom the books are open and accessible for inspection at all times, is chargeable with the facts that the books disclose. C. J. 14A, p. 100. See also 12 C. J. 1124. Black helped carry on the business of the corporation, and repeatedly consulted the books, or had the bookkeeper do so, with reference to his ac-

count. Knowledge of what the books disclosed as to his account was imputed to him.

The next point urged by appellant in its assignments is that Black's agreement with the corporation, as found by the jury and under the undisputed evidence, was invalid, not binding upon the corporation, and unen forceable against it, and consequently unenforceable against appellant as assignee of the corporation.

[7] At the time it was made there were only two stockholders; hence both of them must have been directors, if the corporation functioned as such. The contract relied upon was necessarily, therefore, between the corporation and a director. In a number of states it is held that a contract between the corporation and a director thereof is void. Peerless Fire Ins. Co. v. Reveire (Tex. Civ. App.) 188 S. W. 254; Cook on Corporations (6th Ed.) vol. 2, § 649; C. J. 14A, p. 117. In Texas the rule seems to be well settled that the director of a corporation is without authority to act as such in a matter wherein his interest is adverse to that of the corporation. S. A. St. Ry. Co. v. Adams, 87 Tex. 125, 26 S. W. 1040; Tenison v. Patton, 95 Tex. 284, 67 S. W. 92. This, however, does not of itself render such a contract void. In the Tenison Case, Judge Williams, speaking for the Supreme Court, held that a director may contract with the corporation "if he makes a full disclosure of all facts known to him about the subject, takes no advantage of his position, deals honestly and openly, and concludes a contract *fair and beneficial to the company*" (italics ours); and adds: "Such a transaction is always to be subjected to the closest examination, and a contract between those so situated, which is prejudicial to the corporation should be held to be a fraud, upon it." See, also, Tobin Canning Co. v. Fraser, 81 Tex. 413, 17 S. W. 25. In any event, to bind a corporation on a contract with a director, it must be authorized or ratified by a quorum of the board excluding the interested director. St. Ry. Co. v. Adams, supra. The rule is well stated in 14A C. J. 118, as follows:

"The rule obtaining in a majority of the jurisdictions is that a director may deal or contract with the corporation where he acts in good faith, and the corporation is represented by a quorum of disinterested directors or other independent officers or agents authorized to contract for it. Such a contract is not void, nor is it voidable, except for unfairness or fraud, for which it will be closely scrutinized in equity."

And in construing such a contract that construction most favorable to the corporation will be placed upon it.

[8] Applying these well-established rules to the case at bar, it is clear that the contract, pleaded and found by the jury in the light of the undisputed evidence, was in-valid. Black was disqualified to participate in making such a contract because he was an interested party. Brady, president of the corporation, acted alone for it. The evidence shows that he, too, was indebted to the corporation, and that his indebtedness was incurred in the same manner as that of Black. Black testified that both of them had, prior to January 1, 1920, overdrawn their salaries. As directors they were charged with a proper administration of the corporation's affairs on behalf of creditors as well as for the stockholders. The interests of the corporation, as a separate entity, should have been protected, even if they did own all the stock. The law of this state requires at least three directors before a charter will be granted to a corporation. Article 1153, R. S., provides that a majority shall constitute a quorum. Necessarily in the instant case that was impossible.

[9] But appellee insists that as president and manager, and because of years of similar dealing, Brady had implied authority to bind the corporation in this instance without action by the board of directors. Had this been a contract between the corporation and a third party, and one ordinarily incident to the operation of the business, that might be true. But contracts between the corporation and one of its two directors are not matters of ordinary occurrence in such business, but are, on the contrary, upon their face, of such character as to make them exceptional, and to subject them to the closest scrutiny.

[10] We think this contract was invalid and unenforceable for another reason. It was manifestly prejudicial and unfair to the corporation. Through years of a current or running account Black's indebtedness to the corporation had amounted, on January 1, 1920, to $7,039.35. Theretofore he had been making payments along at intervals. By the agreement his credit with the corporation was to continue. Under it the old account was not closed by a note, nor was it to be paid first. He made certain assignments to the corporation for purposes of payment, it is true, but these assignments could equally as well have been applied without injury to Black to a continuing current account, or all such payments applied to the old account first, and after it was paid then to the new account, which, according to the agreement, was to begin January 1, 1920. The sums actually paid by Black after January 1, 1920, show that either method would have protected the corporation and prevented the running of limitation against any of Black's indebtedness to it. The agreement, therefore, secured to the corporation nothing that it should not have had without it, and, on the other hand, enabled Black to defeat by limitation his debt to it to the extent of $3,753.57. Such a contract, even if it could be

said to be supported by a consideration, was, under the circumstances, manifestly unfair and prejudicial to the corporation. And, as stated by Judge Williams in Tenison v. Patton, supra, to uphold it would be tantamount to sanctioning a fraud upon the corporation.

For the reasons stated, it becomes our duty to reverse the judgment of the trial court, and here render judgment for the appellant, both for its debt and for the foreclosure of its attachment lien.

Reversed and rendered.